**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MICHAEL A. LARSEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC. and THE ADMINISTRATIVE COMMITTEE OF THE HOME DEPOT GROUP BENEFITS PLAN,<br><br>Defendant. | Civil Action No.: _______________<br><br>**COMPLAINT - CLASS ACTION** |

Plaintiff Michael A. Larsen ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Home Depot U.S.A., Inc. ("Home Depot") and the Administrative Committee of the Home Depot Group Benefits Plan (the "Administrative Committee") (collectively, "Defendants"), based on personal knowledge with respect to himself and on information and belief derived from investigation of counsel, review of Plan documents and participant-facing benefits materials and public records as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for an employer to require employees to pay more for health coverage because they use tobacco unless the employer complies

with the Employee Retirement Income Security Act of 1974 ("ERISA") and its wellness-program requirements. Home Depot imposes just such a differential. Under the Home Depot Group Benefits Plan (the "Plan"), associates who certify tobacco use pay more for medical coverage because they do not receive the "Tobacco-Free Discount." Home Depot's own summary plan description ("SPD") states that associates who do not satisfy its tobacco-free standard or timely complete its alternative "will pay a higher payroll deduction amount for Medical Plan coverage." Ex. A, 2024 Benefits Summary at 22. ERISA permits that health-based difference only if Home Depot satisfies every condition of the wellness-program exception, including reasonable design, a compliant alternative, the same, full reward, and prescribed notice. See 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(C)–(E).

2. To impose a lawful tobacco surcharge, a plan must make available a compliant wellness program that gives employees an avenue to avoid the surcharge. Making such a program available means complying with the requirements of ERISA and the implementing regulations adopted by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments"). Congress authorized the Departments to promulgate regulations implementing ERISA's health-status nondiscrimination requirements. The Departments established a framework that must be satisfied to qualify for the statutory wellness-program

exception or safe harbor. A plan sponsor invoking that exception must demonstrate compliance with each applicable requirement.

3. ERISA's regulatory requirements ensure that wellness programs actually promote health and prevent disease instead of operating as "subterfuge[s] for discriminating based on a health factor." Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33163 (June 3, 2013) ("Final Regulations"). The program must furnish a reasonable alternative, make the same, full reward available to similarly situated participants, and clearly communicate the applicable rights. Home Depot's program imposes a rigid early request deadline and a separate completion deadline, while its published refund rules describe different treatment for employees who satisfy the alternative and those who independently become tobacco-free. Those defects raise substantial questions about reasonable design, uniform availability, and notice.

4. Home Depot's deadline structure further undermines the program's reasonable design. The SPD requires participants to request a reasonable alternative within 90 days of their coverage effective date and "complete" it within another 60 days. Ex. A at 22. Not only are these deadlines unreasonable, the same SPD requires four months of tobacco abstinence before an employee who quits independently qualifies for the discount. That distinction violates the spirit of ERISA's anti-discrimination provisions because there is no reason an employee seeking to

complete a cessation program must do so within just 60 days. More fundamentally, the 90-day cutoff discourages employees from pursuing cessation assistance later in the coverage year, even though doing so would advance the program's stated health objectives. These restrictions allow Home Depot to continue collecting higher contributions from employees who might otherwise qualify for the discount, shifting additional medical costs onto participants without a corresponding health-related justification.

5. The need for regulatory safeguards surrounding these programs is underscored by research questioning whether their apparent savings result from improved health or from shifting costs onto employees with higher health risks.[1] The wellness program exception gives employers substantial latitude to offer incentives to promote health, but that latitude means safeguards are essential. Without the same, full reward, individualized alternatives, and accurate disclosures, a purported wellness incentive can become a backdoor for financially discriminating against employees based on their health.

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

6. Outcome-based programs,[2] including a program that rewards being tobacco-free while requiring a tobacco user to pursue an alternative, must provide a compliant reasonable alternative and the same, full reward to all similarly situated persons. The Final Regulations explain that a participant satisfying the alternative during the year must receive the full amount of the annual reward, including the portion corresponding to earlier months. 78 Fed. Reg. at 33163. A timely participant's refund cannot establish compliance if another qualifying participant is permanently denied the reward because of an arbitrary procedural cutoff. Nor can a plan assure uniform availability by publishing prospective-only relief for one route to the tobacco-free rate while asserting later that undisclosed full-year refunds were always available.

7. Home Depot cannot invoke the exception under 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B) merely by offering a cessation telephone number. A qualifying wellness program must be reasonably designed, make the full reward genuinely available, and furnish the required notice in "***all*** plan materials" describing its substantive terms. § 300gg-4(j)(3)(E). The 90-day and 60-

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward. . . if a wellness program tests individuals for specified medical conditions or risk factors . . . and provides a reward to individuals identified as within a normal or healthy range for these medical conditions or risk factors, while requiring individuals who are identified as outside the normal or healthy range (or at risk) to take additional steps . . . to obtain ***the same reward***" as the individual within the normal range. 29 C.F.R. § 2590.702(f)(1)(v) (emphasis added).

day restrictions, the discrepancy between written refund terms and later assertions, and the limitations of the physician-related notice each implicate those separate conditions. Compliance with every applicable requirement in 29 C.F.R. § 2590.702(f)(4) is a prerequisite to the exception.

8. The financial consequences of those violations benefited Home Depot. The SPD states that self-insured Plan benefits and administrative expenses are paid first from Plan assets, including associate contributions, with additional Company funding supplied when needed. Ex. A at 325. The formal Group Benefits Plan likewise provides for employee contributions and states that amounts withheld may remain in the employer's general assets pending their use for benefits. Ex. C, Group Benefits Plan § 10.04, at 24. Participant contributions withheld from wages become Plan assets as of the earliest date they can reasonably be segregated. 29 C.F.R. § 2510.3-102(a)(1). Upon information and belief, additional tobacco-status contributions reduced the corporate funds otherwise needed to meet medical-plan costs. To the extent Home Depot used or held those amounts after they became Plan assets for its own benefit, it also obtained their use and time value.

9. This Complaint challenges a health-based premium differential imposed without a fully compliant wellness program. The published terms condition the alternative on deadlines measured from coverage commencement rather than from when a participant can and will pursue a health-promoting alternative. Home

Depot's denial describes enrollment-only satisfaction and asserts retroactive refunds for independent cessation, contrary to the SPD's express prospective-only wording. The actual uniformity of that administration, the treatment of requests outside the deadlines, and the handling of participant contributions can be established through Home Depot's records. The employer must establish the conditions of the exception it invokes.

10. Participants who are charged more because of tobacco status may challenge the legality of the program authorizing the differential. A claimant need not first achieve a tobacco-free outcome to assert that the Plan's terms fail ERISA's objective safeguards. The claims concern statutory nondiscrimination, fiduciary administration, and appropriate equitable remedies rather than payment of a particular medical service. Plaintiff seeks restitution of improper charges and Plan-level restoration of losses or fiduciary profits, without duplicate recovery.

11. Plaintiff Michael A. Larsen was a Home Depot associate enrolled in Plan medical coverage. He paid more for health insurance coverage throughout his employment at Home Depot because he did not receive the Tobacco-Free Discount. He challenges the uniform legality of the differential imposed upon him and similarly situated associates. He brings this action for himself and the Class and, under ERISA § 502(a)(2), on behalf of the Plan. He seeks appropriate equitable relief for the additional amounts collected under a differential Defendants cannot justify

under ERISA, and restoration of profits and other financial benefits Home Depot obtained through its fiduciary breaches.

**PARTIES**

12. Plaintiff Michael A. Larsen is an individual residing in the United States who worked as a Home Depot associate and participated in the Plan's medical coverage. Home Depot classified him as a tobacco user throughout his employment, and he paid higher medical deductions because the Tobacco-Free Discount was not applied. His individual payroll records will establish the amounts and dates of those deductions.

13. Plaintiff is a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

14. Defendant Home Depot is the Plan sponsor. Exs. A at 329; C, art. II, at 7. Home Depot maintains benefits operations in Atlanta, Georgia, through which its personnel and service providers handle medical enrollments, payroll deductions, and the Tobacco-Free Discount. Home Depot is a fiduciary to the extent it exercises discretionary authority over Plan administration or any authority or control over the management or disposition of Plan assets. 29 U.S.C. § 1002(21)(A). As of January 1, 2026, the Plan had over 377,000 participants.

15. Defendant Administrative Committee is the Plan Administrator. Ex. A at 324–326, 329. The formal 2025 Plan Document expressly identifies the Plan

Administrator as the Plan's named fiduciary and assigns it responsibility for general administration, discretionary interpretation, day-to-day administrative rules, decisions concerning participants' rights, and delegation and oversight of administrative functions. Ex. C § 9.01(a)–(b), at 22. The Administrative Committee is sued for its own fiduciary administration, communication, monitoring, and control of Plan assets to the extent established by the evidence.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action seeks relief under ERISA, a federal statute.

17. This Court has personal jurisdiction over both Defendants. Home Depot maintains its Plan sponsor and benefits administration offices in Atlanta, Georgia. The Administrative Committee is identified in the SPD at Home Depot's Atlanta benefits office and administers the Plan from that address. Ex. A at 324, 329. The challenged wellness program administration and payroll contributions are undertaken or directed in substantial part from Georgia.

18. Venue is proper in the Northern District of Georgia under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered here, both Defendants may be found here, and substantial conduct occurred here. The Atlanta

Division is also the forum designated for litigation concerning the Plan by the 2024 SPD and the formal Group Benefits Plan. Exs. A at 328; C § 10.11, at 25.

## FACTUAL BACKGROUND

### I. HOME DEPOT'S TOBACCO DISCOUNT VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements.

19. ERISA prohibits a group health plan or health insurance issuer from discriminating in premiums or contributions based on a health-status-related factor, including tobacco use. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); *see also* 42 U.S.C. § 300gg-4(b)(1).

20. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

21. Congress authorized the Secretary of Labor to prescribe regulations necessary or appropriate to carry out ERISA Title I, including its group-health-plan requirements. *See* 29 U.S.C. §§ 1135, 1191c. ERISA also incorporates the applicable Public Health Service Act ("PHSA") requirements, including PHSA § 2705, through 29 U.S.C. § 1185d(a)(1). The statutory and regulatory framework therefore governs the Plan's tobacco-based premium differential. *See* 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702.

22. Exercising delegated authority, the Departments issued regulations in 2006 and adopted amended final wellness program regulations on June 3, 2013. 78 Fed. Reg. 33158–59. The regulations apply to plan years beginning on or after January 1, 2014. *Id*. They govern the contributions challenged here.

23. The Final Regulations specify the requirements that a health-contingent wellness program must satisfy to qualify for the statutory exception. The Departments explained that the rules establish criteria for an affirmative defense to a claim of health-status discrimination. Final Regulations, 33163. Once a participant alleges a discriminatory surcharge and facts showing the program's deficiencies, the employer invoking the exception must establish that its program satisfies the applicable statutory and regulatory conditions.

24. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by

ensuring that wellness programs do not arbitrarily penalize participants and preventing employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. See § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section only if all of the [] requirements are satisfied.").

**B. Regulatory Criteria.**

25. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be able to qualify for the reward at least annually. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: The permissible reward ordinarily cannot exceed 30% of the cost of coverage, increased to 50% to the extent attributable to tobacco-prevention or reduction programs. 29 C.F.R. § 2590.702(f)(4)(ii). Plaintiff does not assert a separate reward-cap violation.

(c) Reasonable design: The program must have a reasonable chance to improve health or prevent disease and must not be overly

burdensome, a subterfuge for discrimination, or highly suspect in the method selected. 29 C.F.R. § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternatives: The full reward must be available to all similarly situated participants, including those who satisfy a reasonable alternative standard. 29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice: All materials describing substantive program terms must explain the alternative or waiver, identify contact information, and state that recommendations of the participant's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(v).

26. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

27. Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

28. A central requirement is that the full reward remain available to all similarly situated individuals who satisfy a reasonable alternative during the

applicable plan year. 29 C.F.R. § 2590.702(f)(4)(iv). Although a plan has flexibility concerning how to deliver the portion of the reward attributable to earlier months, it must deliver the full value rather than keep those amounts permanently. The Departments explained:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

78 Fed. Reg. at 33163 (emphases added).

29. The regulatory examples emphasize that merely naming a cessation resource is insufficient if the Plan does not provide a qualifying alternative. *See* 29 C.F.R. § 2590.702(f)(4)(vi), Example 8. Home Depot identifies a free Quit for Life program, but the availability of that program does not answer whether its request and completion restrictions are reasonably designed or whether timely and later-qualifying participants receive the same, full economic reward.

30. The notice requirement applies to "***all plan materials*** describing the terms of" the health-contingent program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). The Departments explained that wellness terms affecting

premiums, including the availability of an alternative, generally must appear in the SPD and governing documents. Final Regulations, 33166 n.24. Because the Tobacco-Free Discount determines medical payroll deductions, its substantive disclosures must satisfy those standards.

## II. HOME DEPOT CANNOT INVOKE ERISA'S WELLNESS PROGRAM EXCEPTION

31. Home Depot's tobacco surcharge is an outcome-based, health-contingent wellness program. The 2024 SPD states that associates and covered spouses can avoid higher medical-plan deductions by certifying they are tobacco-free or by requesting and completing an alternative within 90 days. It defines tobacco-free status in terms of four months without tobacco products, including cigarettes, cigars, smokeless tobacco, and electronic nicotine delivery devices. Ex. A at 22. The 2025 SMM broadens and clarifies the definition but retains the underlying differential. Ex. B at 3.

32. Home Depot's written Plan terms provide different financial rewards to employees seeking to avoid the tobacco surcharge. Under the SPD, an employee who completes the reasonable alternative is entitled to the tobacco discount for the entire covered portion of the Plan Year. But an employee who quits using tobacco independently and remains tobacco-free for four months is told that payroll deductions will be reduced only "for the remainder of the Plan Year." Ex. A at 22. Thus, an employee who successfully quits tobacco on their own may receive a

smaller financial reward than an employee who completes Home Depot's designated alternative.

33. The 2025 SMM reinforces that distinction. It expressly provides that employees who timely complete the reasonable alternative will receive reimbursement of excess payroll deductions already collected, along with the discount going forward. Ex. B at 2. The SMM provides no comparable assurance to employees who independently quit tobacco. Nor did the 2026 SMM change those terms. Ex. D at 1.

34. ERISA's wellness program rules require that the full reward be made available to "all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Yet Home Depot's published terms appear to provide a greater reward to employees who complete its designated alternative than to employees who independently achieve the very health outcome the program is intended to promote. Both groups began as tobacco users subject to the same surcharge, and both subsequently satisfied a condition that Home Depot recognizes as grounds for eliminating it. But only one group is expressly promised reimbursement of the surcharges previously collected.

35. That distinction is particularly difficult to justify where the purpose of the program is to encourage employees to stop using tobacco. An employee who independently quits smoking has achieved that objective. There is no apparent reason why that employee should receive a smaller financial reward than someone

who qualifies through the Plan's alternative program. At a minimum, these published terms plausibly establish that Home Depot failed to make the same, full reward available to all similarly situated employees.

36. The Plan's deadlines raise additional concerns. Under the SPD, an employee who does not satisfy the initial tobacco standard must contact the Benefits Choice Center within 90 days after coverage becomes effective and "complete" the reasonable alternative within 60 days of making the request. Employees who miss those deadlines are told they "will pay a higher payroll deduction amount." Ex. A at 22.

37. Those deadlines unreasonably restrict employees' ability to seek health promotion and obtain the full reward. An employee who seeks cessation assistance after the first 90 days of coverage may be unable to qualify for the discount for that Plan Year, even if the employee is willing to satisfy the same alternative standard. The SPD also fails to explain what an employee must do to "complete" the alternative within 60 days. Although the SPD separately discusses enrollment in Quit for Life and the availability of cessation medications and aids, it does not clearly identify what activities, if any, must be completed to satisfy the alternative. Ex. A at 22, 72.

38. This program is not reasonably designed to promote health. An employee who decides to stop smoking later in the coverage year has no less need

for cessation assistance than someone who acts immediately after enrollment. Yet the published rules impose an early cutoff without explaining how employees who seek assistance later can obtain the same full reward. The deadlines, together with the different treatment of employees who independently quit tobacco, support Plaintiff's allegation that the program fails to satisfy ERISA's reasonable-design and uniform-availability requirements.

39. Plaintiff paid the higher medical contributions imposed on employees who use tobacco. Those additional payments constitute a concrete financial injury. Plaintiff alleges that Home Depot imposed those charges through a wellness program that failed to satisfy the statutory and regulatory conditions permitting health-based premium differentials, including the requirements that the program be reasonably designed to promote health and make the full reward available to all similarly situated individuals.

## III. HOME DEPOT'S FINANCIAL BENEFIT FROM THE TOBACCO DIFFERENTIAL

40. The SPD identifies the Administrative Committee as Plan Administrator and grants that office the exclusive right and complete discretion to interpret Plan terms, decide matters arising in administration and operation, and delegate discretionary functions. Ex. A at 324–326, 329. The formal 2025 Group Benefits Plan expressly makes the Plan Administrator a named fiduciary, requires administration consistent with ERISA, and grants authority to establish operational

rules, resolve eligibility and benefit questions, and appoint agents and advisers. Ex. C §§ 9.01–9.04, at 22–23. The Committee's identified authority concerns the administration challenged here.

41. The Plan's financing terms make the surcharge's economic effect concrete. The SPD states that all self-insured benefits and administrative expenses are paid first from Plan assets, including associate contributions. Home Depot may make additional contributions when Plan resources are insufficient. Ex. A at 325. The formal Plan Document similarly authorizes the employer to set participant contributions and provides that contributions withheld through payroll are separately accounted for, while remaining in general employer assets until used to provide Plan benefits. Ex. C §§ 5.04, 10.04, at 12, 24.

42. Therefore, an additional contribution from a tobacco user supplies additional funding for the same medical coverage. In a self-insured arrangement using associate contributions before further employer funding, those dollars can replace funds Home Depot otherwise would have supplied for benefits or expenses. Upon information and belief, the challenged contributions were applied in that manner, yielding a corresponding corporate financial benefit.

43. The Administrative Committee is responsible under the Plan documents for general administration, discretionary interpretation, and oversight of delegated functions. Exs. A at 326; C § 9.01, at 22. Home Depot operates or supports

relevant administration through payroll and benefits systems, while the Benefits Choice Center handles certification, requests for alternatives, and changes in medical-plan deductions. Those activities concern whether particular participants pay the higher contribution and whether collected amounts are refunded, credited, or retained.

44. Participant contributions withheld for Plan coverage become Plan assets as soon as they can reasonably be segregated from employer assets. 29 C.F.R. § 2510.3-102(a)(1), (c). A Plan provision allowing contributions to remain in employer general assets does not displace that federal rule. To the extent either Defendant exercised authority or control over those amounts after they became Plan assets, that conduct carried fiduciary responsibility independent of Home Depot's initial settlor decision to establish a contribution structure.

45. Home Depot commingled the ill-gotten surcharge proceeds with its general assets and used the money to defray expenses otherwise borne by the Company, retained associated corporate resources, and, upon information and belief, obtained interest, investment use, or other value from retaining those funds. The precise disposition of the funds, including any impermissible delay after segregation became practicable, is reflected in Home Depot's payroll, account, contribution, and refund records.

46. ERISA § 409, 29 U.S.C. § 1109(a), requires a breaching fiduciary to restore both Plan losses and profits made through the use of Plan assets. A fiduciary's gain and a corresponding balance-sheet loss to the Plan are distinct statutory measures. An accounting can determine whether the challenged use of the Plan's assets generated avoided expenditures, retained cash, float, or other profits attributable to a breach. Plaintiff seeks Plan-level relief to the extent those facts establish an actionable fiduciary gain; the ordinary payment of lawful medical expenses from lawfully collected participant contributions is not, by itself, the alleged breach.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action individually and on behalf of similarly situated individuals under Federal Rule of Civil Procedure 23(a) and (b)(1), including a representative claim for Plan-wide relief under ERISA § 502(a)(2). The "Class Period" is the period from six years before the filing of this action through entry of final judgment, subject to applicable limitations periods and appropriate refinement after discovery.

48. Plaintiff proposes the following Class definition, subject to amendment after discovery:

> **Tobacco Surcharge Class**
>
> All individuals residing in the United States who, during the Class Period, paid higher medical-plan contributions based

> on tobacco-use status, including through the nonreceipt of the Tobacco-Free Discount, in connection with participation in the Home Depot Group Benefits Plan.

49. Excluded from the Class are Home Depot's officers and directors, members of the Administrative Committee, and other persons responsible for the challenged fiduciary conduct, the judicial officers assigned to this action, and their immediate families.

50. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

51. **Numerosity**. Home Depot maintains medical benefits for associates at numerous locations throughout the United States, and its uniform Tobacco-Free Discount is described in generally applicable benefits materials. Upon information and belief, hundreds or more associates and covered family members paid the challenged tobacco-status premium differential during the Class Period, making joinder impracticable. Home Depot's payroll, enrollment, and tobacco-status records will identify the class members and amounts charged.

52. **Commonality**. Common questions include whether Home Depot imposed a tobacco-based premium differential; whether the 90-day request and 60-day completion restrictions satisfy the reasonable-design, annual-opportunity, and reasonable-alternative requirements; whether the same, full reward was available to qualifying participants despite the SPD's prospective-only cessation description;

whether all materials describing the program gave compliant notice of physician-related alternatives; whether the Administrative Committee and Home Depot, within their respective fiduciary capacities, prudently administered refunds, communications, and participant contributions; whether Plan assets were used for Home Depot's benefit; and the appropriate forms of Plan-level and Class-wide equitable relief.

53. **Typicality**. Plaintiff's claims are typical because he participated in Home Depot medical coverage, was classified as a tobacco user, and paid a higher contribution after failing to receive the Tobacco-Free Discount. The challenge concerns the program's uniform terms, common disclosures, treatment of similarly situated participants, and administration of additional contributions. Differences in deduction amounts, coverage tiers, or particular qualification efforts do not alter the central statutory questions.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately represent the Class. He suffered the same type of increased medical contribution and loss of use of funds that are at issue for other tobacco-status payors. He has retained counsel experienced in complex ERISA and class litigation and has no known interests antagonistic to the Class.

55. Class treatment permits the Court to resolve the common legality of Home Depot's wellness-program terms, disclosures, refund practices, and fiduciary

conduct in a single proceeding. Separate actions concerning restoration and accounting of the same Plan assets risk inconsistent standards or practical impairment of other participants' interests, supporting Rule 23(b)(1).

## CAUSES OF ACTION

## COUNT I

### UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE A COMPLIANT REASONABLE ALTERNATIVE STANDARD AND THE FULL REWARD

(Violation of ERISA § 702, 29 U.S.C. § 1182(b), and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(C)–(D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv))

56. Plaintiff re-alleges and incorporates by reference paragraphs 1–55 of this Complaint, excluding the allegations of the other Counts.

57. ERISA prohibits group health plans from charging participants higher premiums or contributions based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). Home Depot required Plaintiff and the Class to pay higher medical contributions because of their tobacco status. Those additional charges are unlawful unless Home Depot satisfies ***every*** statutory and regulatory requirement governing health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4).

58. Among those requirements, the Plan must be reasonably designed to promote health or prevent disease, and the full reward must be available to "all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(B), (D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv). For employees who do not satisfy the initial tobacco

standard, the Plan must provide a reasonable alternative standard or waiver through which they can qualify for the same full reward.

59. Home Depot's Plan terms provide different rewards to employees depending on how they stop using tobacco or otherwise qualify for the discount. Under the SPD, employees who complete the designated reasonable alternative are promised the tobacco discount for their entire covered portion of the Plan Year. But employees who independently quit using tobacco and remain tobacco-free for four months are told that their payroll deductions will be reduced only "for the remainder of the Plan Year." Ex. A at 22. Thus, employees who successfully quit tobacco on their own may receive a smaller financial reward than employees who complete Home Depot's designated alternative.

60. The 2025 Summary of Material Modifications ("SMM") reinforces this disparity. It expressly promises employees who timely complete the reasonable alternative reimbursement of the excess payroll deductions previously collected, along with the discount going forward. Ex. B at 2–3. The SMM provides no comparable promise to employees who independently quit tobacco, and the 2026 SMM leaves these provisions unchanged. Ex. D at 1.

61. These employees are similarly situated in the respects that matter. Although the regulations permit plans to distinguish among groups of employees based on bona fide employment classifications, such as full-time or part-time status,

geographic location, or collective bargaining status, they do not permit distinctions based on health factors. 29 C.F.R. § 2590.702(d)(1). Nothing in Home Depot's published tobacco-surcharge provisions identifies any bona fide employment classification separating employees who independently quit tobacco from those who complete the designated alternative. Rather, both groups are subject to the same surcharge, and the Plan distinguishes between them based on how they qualify for its removal. The regulations require that the same full reward be available to all similarly situated employees.

62. This disparity between similarly situated individuals violates ERISA's requirement that the full reward be available to all similarly situated individuals. 29 C.F.R. § 2590.702(f)(4)(iv). The regulation requires uniform availability of the full reward, and Home Depot's own Plan documents distinguish between employees who receive reimbursement of previously collected surcharges and employees whose deductions are reduced only prospectively. Plaintiff alleges that Home Depot failed to provide the same full financial reward to all similarly situated employees who qualified under its wellness program.

63. The Plan's deadlines raise additional concerns about whether the reasonable alternative was genuinely available and reasonably designed to promote health. Under the SPD, an employee must contact the Benefits Choice Center within 90 days after medical coverage becomes effective and "complete" the reasonable

alternative within 60 days of making the request. Employees who miss those deadlines are told they "will pay a higher payroll deduction amount." Ex. A at 22. Plaintiff alleges that these deadlines, particularly the 60-day completion requirement, unreasonably restrict employees' ability to obtain the full value of the reward, including reimbursement of surcharges previously collected, even when employees subsequently complete the reasonable alternative during the same Plan Year.

64. Home Depot's 60-day completion requirement impacts the value of the reward employees ultimately receive. The SPD warns that employees who fail to "complete" the alternative within 60 days "will pay a higher payroll deduction amount." Ex. A at 22. The 2025 SMM, meanwhile, promises reimbursement of previously collected surcharges only to employees who timely complete the alternative. Ex. B at 2–3. Read together, these provisions indicate that an employee who completes the alternative after the 60-day deadline forfeits reimbursement of surcharges already paid, even if the employee completes the same program during the Plan Year. Thus, Home Depot appears to use the completion deadline not merely to regulate when employees may pursue the alternative, but also to determine whether they receive the full financial value of the reward. Plaintiff alleges that this distinction, together with the Plan's unequal treatment of employees who

independently quit tobacco, violates the requirement that the same, full reward be available to all similarly situated individuals.

65. Because Home Depot imposed tobacco-related premium differentials through a wellness program that failed to make the same full reward available to all similarly situated individuals and imposed unreasonable restrictions on obtaining that reward, Plaintiff alleges that the program did not satisfy the conditions of ERISA's wellness program exception. Plaintiff and Class Members consequently paid additional medical contributions based on their tobacco status and lost the use of those funds. The amounts collected are reflected in Defendants' payroll and premium-deduction records.

66. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes participants and beneficiaries to seek appropriate equitable relief to redress violations of ERISA. Plaintiff and the Class seek, as authorized and appropriate, equitable restitution, surcharge against Defendants acting in a fiduciary capacity, disgorgement, an accounting, and declaratory relief requiring compliance with ERISA's wellness program requirements, including uniform availability of the full reward, without duplicate recovery.

## COUNT II

## BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)

(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109; brought under 29 U.S.C. § 1132(a)(2))

67. Plaintiff re-alleges and incorporates paragraphs 1–55, including the allegations concerning the Administrative Committee's fiduciary status, Home Depot's control over participant contributions, and the financial benefits Home Depot obtained from the tobacco surcharge, but excluding the allegations of the other Counts.

68. The SPD expressly identifies the Administrative Committee as Plan Administrator. The formal Plan Document designates the Plan Administrator as a named fiduciary and grants it broad authority to administer the Plan, interpret its terms, resolve disputes, establish administrative procedures, and appoint and supervise agents. Exs. A at 324–326, 329; C §§ 9.01–9.04, at 22–23. The Administrative Committee was therefore responsible for the prudent administration of the Plan within the scope of its authority. Home Depot also acted as a fiduciary to the extent it exercised discretionary authority over Plan administration or authority or control over Plan assets.

69. Home Depot collected the challenged tobacco-related contributions through payroll deductions. Employees classified as tobacco users paid more for the same medical coverage unless they satisfied Home Depot's tobacco-free standard or

completed its prescribed alternative within the required deadlines. Ex. A at 22. These additional payments increased the share of medical costs financed by employees and correspondingly reduced the amount Home Depot otherwise would have needed to contribute toward its self-insured medical program.

70. Home Depot's own Plan documents establish how that arrangement benefited the Company. The SPD provides that self-insured benefits are paid first from available Plan assets, including employee contributions, with additional employer funding supplied as necessary. Ex. A at 325. The more Home Depot collected from employees, the more participant money was available to pay medical expenses before Home Depot had to use its own funds. Upon information and belief, Home Depot used the additional tobacco-related contributions to pay costs that otherwise would have required corporate funding, preserving those funds for its own benefit.

71. The additional deductions were contributions for medical coverage. They were collected through Home Depot's payroll systems and accounted for as part of the Plan's funding arrangements. The formal Plan Document provides that employee contributions may remain in the employer's general assets until used to provide benefits, subject to separate accounting. Ex. C § 10.04, at 24. Under federal law, however, participant contributions become Plan assets as soon as they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-

102(a)(1). Home Depot and the Administrative Committee owed fiduciary duties to the extent they exercised authority or control over those assets.

72. ERISA requires fiduciaries to act solely in the interests of participants and beneficiaries, with the care, skill, prudence, and diligence required of a prudent fiduciary. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Those duties governed Defendants' fiduciary administration of the tobacco program, including the application of its qualification requirements, the collection and refund of participant contributions, and the management and disposition of Plan assets. Home Depot's authority as an employer to establish lawful contribution rates did not permit Defendants to administer those rates unlawfully or use Plan assets for Home Depot's benefit.

73. Home Depot's program terms imposed substantial restrictions on employees seeking to avoid the higher contribution rate. Employees unable to satisfy the initial tobacco-free standard were required to request an alternative within 90 days of their medical coverage effective date and complete that alternative within another 60 days. Ex. A at 22. Employees who missed those deadlines remained subject to the higher contributions, even though they could complete the program. The deadlines thus operated to preserve additional employee contributions without regard to whether participants could subsequently satisfy an appropriate alternative standard.

74. Home Depot's refund provisions likewise favored continued collection of higher contributions. The 2024 Benefits Summary promised the full-year discount to employees who timely completed a reasonable alternative, but provided that employees who independently became tobacco-free for four months could obtain the lower rate only for the remainder of the Plan Year. Ex. A at 22. The 2025 Summary of Material Modifications expressly provided retroactive refunds for employees who timely completed the alternative. Ex. B at 2. These written terms did not make the same, full reward uniformly available through every recognized means of satisfying the tobacco-free standard. The resulting difference allowed Home Depot to retain contributions that similarly situated participants receiving the full reward would not have paid.

75. Defendants had a fiduciary obligation to administer the program prudently and in accordance with ERISA. That required examining whether the 90-day request deadline, 60-day completion requirement, and refund restrictions served a legitimate health-promotion purpose or instead imposed unnecessary barriers to obtaining the discount. A program that allows Home Depot to keep collecting higher contributions after an employee could otherwise satisfy an appropriate alternative raises a serious question about whose financial interests the administration serves. Upon information and belief, Defendants failed to undertake a prudent review of

those restrictions and continued to administer the program in a manner that benefited Home Depot financially.

76. Defendants also failed to ensure that participants received the disclosures necessary to understand and exercise their rights. The tobacco-discount provisions refer to possible physician involvement, but do not clearly assure participants that recommendations from their personal physicians concerning a reasonable alternative standard will be accommodated. Upon information and belief, Defendants provided participant-facing materials describing the terms of the program without providing all the required disclosures including in prior Benefit Summaries and in enrollment processes that failed to mention the physician-accommodation statement. failed to prudently review and correct these communications. Upon information and belief, Defendants failed to review the terms of these communications to ensure compliance with the statute.

77. These failures had a direct financial consequence. Each additional tobacco-related contribution increased the amount available to finance Plan expenses from employee wages. Because the Plan used participant contributions to fund medical costs, those contributions reduced the corporate resources Home Depot otherwise would have needed to supply. Upon information and belief, Home Depot retained the corresponding funds, avoided additional expenditures, and obtained a

financial benefit from the continued collection of contributions under the challenged program.

78. The same funding arrangement also permitted Home Depot to benefit from possession and use of participant money. The Plan Document allows employee contributions to remain in the employer's general assets until used to provide benefits. Ex. C § 10.04, at 24. That provision cannot override the federal rule governing when withheld contributions become Plan assets. To the extent Home Depot retained control of those funds after they became Plan assets, it obtained their use and time value while the participants who paid them lost the use of their money.

79. Home Depot's financial interest created a conflict for those responsible for administering the surcharge and overseeing the disposition of participant contributions. The Company stood to benefit when employees remained subject to higher deductions, when refunds were limited, and when additional participant contributions were used in place of employer funding. The Administrative Committee was obligated to exercise its fiduciary authority for the benefit of participants, regardless of the financial consequences to Home Depot. Home Depot likewise could not exercise fiduciary control over Plan assets to advance its own financial interests.

80. Upon information and belief, Defendants failed to conduct a prudent review of the tobacco program's deadlines, reasonable alternatives, refund

procedures, participant communications, and treatment of the resulting contributions. The deficiencies were apparent from the written program terms. Yet Defendants continued to administer a program that imposed additional charges on tobacco users while limiting the circumstances in which participants could obtain the full reward. Those failures allowed Home Depot to continue receiving the financial benefit of the higher contributions.

81. The Administrative Committee also had responsibility to prudently monitor persons performing delegated fiduciary functions. The Plan Document authorizes it to appoint agents, delegate administrative duties, and establish procedures governing Plan operations. Ex. C §§ 9.01–9.04, at 22–23. Upon information and belief, the Committee delegated aspects of the tobacco program, including enrollment, eligibility determinations, payroll deductions, and refund administration, to Home Depot personnel or outside service providers. The Committee failed to ensure that those functions were performed in compliance with ERISA. Home Depot, to the extent it exercised fiduciary authority through its personnel, likewise failed to administer the program prudently.

82. The financial incentive underlying these failures was substantial. Every pay period in which an employee paid the higher tobacco-related contribution increased the funds collected from participants. Those funds were available to cover medical expenses that otherwise could have required additional employer

contributions. The longer employees remained subject to the higher rate, and the fewer refunds Home Depot issued, the greater the potential reduction in Home Depot's own funding obligations. Upon information and belief, Defendants permitted that arrangement to continue without ensuring that the additional contributions were lawfully collected and administered.

83. Defendants' conduct, insofar as undertaken in their respective fiduciary capacities, breached ERISA's duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). The Administrative Committee failed to prudently administer and oversee a program that shifted additional medical costs onto employees and benefited the Plan sponsor. Home Depot, to the extent it exercised fiduciary authority or control over participant contributions, used that authority in a manner that furthered its own financial interests. Plaintiff challenges Defendants' administration of the surcharge and their control and use of Plan assets, including the resulting profits to Home Depot.

84. The challenged conduct also implicates ERISA's prohibited-transaction rules. Home Depot is a party in interest as the employer and Plan sponsor. 29 U.S.C. § 1002(14). Upon information and belief, the Administrative Committee caused or permitted participant-derived Plan assets collected through the noncompliant program to be used for Home Depot's benefit, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). To the extent Home Depot exercised

fiduciary control over those assets and dealt with them in its own interest or for its own account, it violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). Any applicable statutory exemption is for Defendants to establish. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 702–04 (2025).

85. ERISA expressly requires a breaching fiduciary to restore profits made through the use of Plan assets. ERISA § 409(a), 29 U.S.C. § 1109(a). Congress imposed that obligation separately from the duty to make good losses to the Plan. Thus, even if the Plan had sufficient funds to pay every medical claim, a fiduciary cannot retain profits obtained through the misuse of Plan assets. The relevant inquiry includes what Home Depot gained through the challenged fiduciary conduct, regardless of whether the Plan suffered a corresponding reduction in its reported assets.

86. Upon information and belief, Home Depot profited from the challenged conduct by using additional participant contributions to reduce its own funding obligations and by retaining the use and time value of those funds. Those benefits may include avoided employer contributions, preserved corporate cash, interest, float, and other financial gains attributable to the use of Plan assets. Plaintiff seeks restoration of profits established to have resulted from fiduciary breaches, together with any losses to the Plan. The precise amounts are ascertainable from Defendants' records.

87. Defendants possess or control the records necessary to determine those amounts, including payroll deductions, tobacco-status certifications, alternative-standard determinations, refund records, Plan accounts, employer funding records, contribution remittances, and records identifying who exercised authority over the funds. Those records will establish how much Home Depot collected, how the contributions were used, the extent to which they displaced employer funding, and the profits Home Depot obtained through any misuse of Plan assets. An accounting is necessary to identify the full financial benefit and determine the appropriate restoration.

88. Plaintiff brings this Count in a representative capacity on behalf of the Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). The additional medical contributions deducted from his compensation give him a concrete personal stake in the challenged conduct. He seeks restoration to the Plan of losses and profits attributable to Defendants' fiduciary breaches under 29 U.S.C. § 1109(a), an accounting of Home Depot's financial gains, and other appropriate Plan-level relief. To the extent restored amounts represent contributions unlawfully collected from participants, Plaintiff also requests their equitable administration for the benefit of affected participants, without duplicate recovery.

## COUNT III

## BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)

(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106; brought under 29 U.S.C. § 1132(a)(3))

89. Plaintiff re-alleges and incorporates paragraphs 1–55, including the allegations concerning Defendants' fiduciary authority, administration of the tobacco surcharge, control of participant contributions, and financial benefits obtained by Home Depot.

90. The Administrative Committee is the Plan Administrator and named fiduciary responsible for administering the Plan, interpreting its terms, establishing administrative procedures, and overseeing delegated fiduciary functions. Exs. A at 324–326, 329; C § 9.01, at 22. Home Depot also acted as a fiduciary to the extent it exercised discretionary authority over the administration of the tobacco surcharge or authority or control over Plan assets, including participant contributions collected through payroll deductions. 29 U.S.C. § 1002(21)(A).

91. Defendants breached their fiduciary duties by administering the tobacco surcharge in a manner that required Plaintiff to pay additional medical contributions under a noncompliant wellness program. Home Depot conditioned the Tobacco-Free Discount on strict request and completion deadlines and imposed higher contributions on employees who did not satisfy those requirements. Its published terms also resulted in similarly situated individuals being treated

disparately. Those who completed a reasonable alternative and those who independently stopped using tobacco were not provided with the same full reward. Exs. A at 22; B at 2. Defendants continued to administer and collect the additional contributions despite these deficiencies.

92. Defendants also failed to provide Plaintiff with the information necessary to understand and exercise his rights under the wellness program. Upon information and belief, participant-facing materials, including prior years' benefit summaries and enrollment materials, did not contain the necessary disclosures. These omissions concerned the very procedures through which Plaintiff could have avoided the higher contributions. By failing to communicate those protections adequately, Defendants deprived Plaintiff of an informed opportunity to obtain the lower medical-plan rate.

93. Upon information and belief, Defendants failed to prudently review and monitor the program's qualification requirements, refund procedures, participant communications, and collection of tobacco-related contributions. The Administrative Committee was responsible for overseeing these functions within its fiduciary authority, including functions delegated to Home Depot personnel or outside administrators. Home Depot likewise failed to exercise any fiduciary authority it held with appropriate prudence. These failures permitted the continued

collection of additional contributions under a program that did not satisfy ERISA's requirements.

94. Plaintiff suffered a direct financial injury. He participated in Home Depot-sponsored medical coverage and paid the tobacco surcharge throughout his employment. As a result, Home Depot withheld higher medical-plan contributions from his paychecks than it charged similarly situated tobacco-free employees for the same coverage. Each deduction reduced Plaintiff's compensation and deprived him of money he otherwise would have retained and used for his own purposes. Because Defendants administered the differential without satisfying the statutory requirements permitting it, Plaintiff paid amounts that could not lawfully be imposed under the challenged program. His injury consists of those additional payments and the loss of their use, independent of whether he personally completed a cessation alternative.

95. Home Depot received a corresponding financial benefit from the amounts collected from Plaintiff and other tobacco users. The Plan's self-insured medical expenses are paid first from Plan assets, including employee contributions, with additional employer funding supplied as necessary. Ex. A at 325. Each additional participant contribution increased the funds available to pay medical expenses and reduced the amount Home Depot otherwise would have needed to contribute. Upon information and belief, Home Depot used the challenged

contributions to defray medical costs that otherwise would have required corporate funding, preserving those funds for its own benefit. To the extent Home Depot retained control of participant contributions after they became Plan assets, it also obtained their use and time value.

96. Plaintiff lost money from his paychecks while Home Depot benefited from the additional contributions collected through the challenged program. Those losses were the foreseeable result of Defendants' failure to administer the surcharge prudently and in accordance with ERISA. Plaintiff seeks appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including equitable surcharge against the responsible fiduciaries to compensate him for losses caused by their breaches, restitution of identifiable funds or proceeds where tracing permits, and disgorgement of profits obtained through fiduciary misconduct to the extent legally available. The amount of Plaintiff's losses and Home Depot's corresponding financial gains can be determined through payroll records, Plan accounts, and an accounting.

97. Home Depot's financial interest underscores the significance of Defendants' fiduciary breaches. The additional contributions collected from tobacco users helped finance medical expenses that otherwise could have required Home Depot to use its own funds. Home Depot therefore benefited financially when participants remained subject to higher deductions or failed to obtain refunds. The

Administrative Committee was required to administer and oversee the Plan in the interests of participants, regardless of Home Depot's financial interest in retaining those contributions. Upon information and belief, Defendants failed to discharge those obligations, allowing Plaintiff and other participants to continue bearing additional medical costs while Home Depot preserved its own corporate resources.

98. Plaintiff and the Class seek appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to redress Defendants' fiduciary breaches and recover the financial losses caused by the unlawful administration of the tobacco surcharge. That relief includes equitable surcharge, restitution, disgorgement of fiduciary profits, an accounting, declaratory relief, and a constructive trust or equitable lien over identifiable funds or proceeds where appropriate. Plaintiff seeks restoration of the additional contributions unlawfully collected from him and the loss of use of those funds, without duplicate recovery. He does not seek payment of medical-expense benefits under 29 U.S.C. § 1132(a)(1)(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered against Defendants and that the Court award the following relief:

A. An Order certifying this action under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

B. A declaration that the tobacco-based premium differential administered by Defendants violates ERISA § 702, 29 U.S.C. § 1182, and applicable wellness-program requirements;

C. An Order requiring Defendants, through appropriate equitable relief within their respective responsibilities, to reimburse or credit Plaintiff and Class Members for amounts by which they paid more for medical coverage under the noncompliant tobacco differential;

D. A declaration that Defendants, to the extent acting in their respective fiduciary capacities, breached duties under 29 U.S.C. §§ 1104 and 1106 through the challenged administration, communications, monitoring, and use of participant Plan assets for Home Depot's benefit;

E. An Order requiring an accounting of tobacco-related contributions, refunds and credits, use and disposition of those funds, and the resulting Plan losses and fiduciary profits;

F. Appropriate injunctive relief barring continued unlawful administration and requiring compliant notices, a reasonably designed alternative process, and the same, full reward;

G. Disgorgement of profits, avoided expenditures, float, investment returns, and other financial benefits attributable to the fiduciary breaches of the responsible Defendants;

H. Equitable restitution of specifically identifiable amounts and proceeds, including a constructive trust or equitable lien where appropriate;

I. Equitable surcharge against Defendants, as appropriate in their respective fiduciary capacities, for losses caused by fiduciary breaches and other relief available under that equitable remedy;

J. Relief to the Plan under 29 U.S.C. §§ 1109 and 1132(a)(2), including restoration of losses and profits made through the use of Plan assets, an accounting, and appropriate administration of restored funds for the benefit of affected participants;

K. Prejudgment interest as permitted by law;

L. Reasonable attorneys' fees, expenses, and costs under ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable authority; and

M. Any other relief that the Court deems just and proper, without duplicate recovery.

Dated: November 20 2026

Respectfully submitted,

*/s/ Eric Fredrickson*

Eric Fredrickson (Bar #489783)
Oren Faircloth (*pro hac vice* forthcoming)
William H. Payne (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (929) 677-5181
E: efredrickson@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I certify that the forgoing has been prepared using Time New Roman 14-point font in compliance with Local Rule 5.1(C).

*/s/ Eric Fredrickson*
Eric Fredrickson (Bar #489783)